YOUNG, C.J.
(dissenting). While I agree with the majority’s analysis of our state’s intestacy laws, I respectfully dissent and would decline to answer the certified question. I do so for two reasons.
First, I continue to believe that this Court lacks the constitutional authority to issue advisory opinions[1] other than as described in article 3, § 8 of Michigan’s 1963 Constitution.[2] My position regarding the Court’s constitutional authority did not prevail, and I accept that the Court has determined otherwise.[3] However, my constitutional reservation counsels that this Court *84 should accept and answer certified questions from the federal courts sparingly and only when the Michigan legal issue is a debatable one and pivotal to the federal case that prompted the request for the certified question. It is this prudential concern that I now address.
I concede that the question whether the children at issue are “heirs” of their deceased father under Michigan intestacy law is determinative to the federal case.[4] Under federal law, the children are entitled to social security survivors’ benefits if the children can take as heirs from their father under Michigan intestacy law, MCL 700.2101 et seq.[5] The children’s entitlement to take as heirs is provided by MCL 700.2103, under which it must be shown that the children are both their father’s descendants[6] and that they survived their father.[7] However, as the majority opinion conclusively establishes, the question whether the children may be considered to have been alive at the time of their father’s death is not debatable under our intestacy laws — a point plaintiffs counsel conceded at oral argu *85 ment. The only way that the children may be deemed to have survived their father is if they were “in gestation” at the time of their father’s death.[8] Thus, the only way plaintiff could prevail is if this Court failed to give the word “gestation” its plain and ordinary meaning. Indeed, plaintiffs counsel urged that these children could be deemed “in gestation” by construing gestation as a “process” that included hormone therapy administered to the mother before the father’s death as well as in vitro fertilization and embryo transfer that occurred after the father’s death. This, of course, is no more than a call for construction by eisegesis and would require an entirely apocryphal interpretation of a common term: gestation.
I believe that no serious debate regarding the plain language of the relevant laws exists and that no reasonable construction of our laws would permit the children to take as heirs of their deceased father under our intestacy provisions.[9] Indeed, both the Social Security *86 Administration and the administrative law judge who reviewed the case applied the common meaning of gestation and denied survivor’s benefits to the children because, as the Social Security Administration phrased it, the children “were not in gestation at the time of Mr. Mattison[’s] death.” That being the case, the federal court should have been easily able to determine for itself the very answer to its certified question that the majority has provided. As such, this would appear to be the textbook example of the kind of certified question that this Court ought to have exercised its discretion and declined to answer.
For these reasons, I respectfully dissent and would decline to answer the certified question.

 See In re Certified Question from the United States Dist Court for the Eastern Dist of Mich (Wayne Co v Philip Morris, Inc), 622 NW2d 518 (Mich, 2001) (Young, J., concurring); In re Certified Questions from the United States Court of Appeals for the Sixth Circuit, 472 Mich 1225 (2005) (Young, J., concurring); In re Certified Question (Waeschle v Oakland Co Med Examiner), 485 Mich 1116, 1117 (2010) (Young, J., dissenting).

 Const 1963, art 3, § 8 grants this Court limited authority to issue advisory opinions: “Either house of the legislature or the governor may request the opinion of the Supreme Court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date.”

 In contrast to the narrow scope of authority described in Const 1963, art 3, § 8, MCR 7.305(B) authorizes this Court to answer certified questions from “a federal court, [foreign] state appellate court, or tribal court.” I believe that MCR 7.305(B) exceeds this Court’s judicial power and is unconstitutional.

 Although the question is determinative, neither the federal court nor the plaintiff felt much urgency because the certified question was not filed with this Court for nearly five years after the federal court ordered that the question he certified.

 See 42 USC 416(h)(2)(A).

 Whether the children are their father’s descendants has not been a point of dispute in this litigation. MCL 700.2114 describes various ways in which “[t]he parent and child relationship” may he established in order to show that a claimant is a descendant of a decedent. However, merely showing that a claimant is a descendant under MCL 700.2114 is insufficient to establish an entitlement to take as an heir under Michigan’s laws of intestate succession. Rather, the plain language of MCL 700.2103 also requires that the descendant “survive the decedent[.]”

 MCL 700.1107(j) defines “survive” to mean that “an individual neither predeceases an event, including the death of another individual, nor is considered to predecease an event under [MCL 700.2104 or MCL 700.2702].” Thus the children are deemed to have survived their father if they did not die before, i.e., did not predecease, the death of their father.

 MCL 700.2108, concerning afterborn heirs, provides in full as follows: “An individual in gestation at a particular time is treated as living at that time if the individual lives 120 hours or more after birth.”

 Contrary to the assertions of the concurrence, it cannot be said that “[i]t is not known whether the Legislature has ever considered the problem presented here.” Ante at 80. For more than 130 years, Michigan’s law regarding the intestate inheritance rights of afterborn children remained substantively unchanged, simply providing that “[p]osthumous children are considered as living at the death of their parents.” 1846 RS, ch 67, § 13; 1857 CL 2824; 1871 CL 4321; How Stat 5784; 1897 CL 9076; 1915 CL 11807; 1929 CL 13452. See also 1939 PA 288, ch II, § 85; 1948 CL 702.85; 1970 CL 702.85. If that historical statutory language had remained unaltered, the Mattison children would be entitled to inherit as heirs because they are the “posthumous children” of their natural father, Jeffery Mattison.
However, beginning with 1978 PA 642, the Legislature amended the law, providing in former MCL 700.109(2) that “[hjeirs of the decedent conceived before his death but born thereafter shall inherit as if they had been born in the lifetime of the decedent.” (Emphasis added.) With the *86 enactment of the Estates and Protected Individuals Code (EPIC), 1998 PA 386, MCL 700.1101 et seq., the law was amended to reflect the current language, requiring that a child he “in gestation” at the time of a decedent’s death in order to he treated as living at that time. Thus, the Legislature has twice amended the law to unambiguously reflect that an afterborn child may take as an heir under our intestate succession provisions provided that the child is in útero at the time of a decedent’s death.
Moreover, the enactment of MCL 700.2114(1)(a) affirmatively repudiates any claim that the Legislature failed to consider the implications of advanced reproductive technology on Michigan’s law of intestate succession. MCL 700.2114(1)(a) states that the necessary “parent and child relationship” may be established when a “child [is] conceived by a married woman with the consent of her husband following utilization of assisted reproductive technology ....”
"While the concurrence believes that the Legislature’s failure to allow after-conceived children to inherit under our law of intestate succession is lamentable, such a policy choice is perfectly consistent with the Legislature’s stated “purposes and policies” underlying the enactment of EPIC, which include “promot[ing] a speedy and efficient system for liquidating a decedent’s estate and making distribution to the decedent’s successors.” MCL 700.1201(c). Because frozen human reproductive material remains viable for many years, providing an open-ended period of entitlement for after-conceived children to take as heirs would prevent the closure of an intestate decedent’s estate for an indefinite period of time.